always an important element in determining what is a proper salvage.

This feature was not sufficiently considered by the pilots, when they demanded $5,000 nor when they agreed on $2,500. The latter is a larger sum than could be justly given for the salvage of property valued at $3,600, accomplished under the circumstances shown here. The labor of the pilots was considerable through nine days, nor was it unattended with peril, and they might well receive for it $2,500, or a larger sum, if only the property saved had been of greater value. But on a valuation of the property saved at $3,600, $2,500 is too much. If the brig had been derelict, $1,800 would have been the salvage ordinarily awarded, and these salvors cannot claim to receive more than, or as much as if they had found the brig abandoned at sea.

I consider $1,500 to be as liberal a reward as can be given to these salvors, out of this amount of property; for that sum they must have a decree. I give them also the costs, because the claimants offered them no particular sum in cash, before suit brought.

## Case No. 17,473.

### WEYAUWEGAN v. AYLING.

[See 99 U. S. 112.]

## Case No. 17,474.

### In re WEYHAUSEN et al.

[1 Ben. 397.] 1

District Court, S. D. New York.   Sept., 1867.

IVOLUNNTARY BANKRUPTCY — APPEARANCE BY AT-TORNEY.

In proceedings in involuntary bankruptcy, the order to show cause having been served on only one of two debtors, and no notice having been published as to the other, *held*, that the appearance of the debtor not served need not be personal, but might be by attorney.

[In the matter of William Weyhausen and Philip Freytag, bankrupts.]   In this case, which was a petition in involuntary bankruptcy, the order to show cause was served on only one of two debtors, and no publication of notice as to the other had been made. Both debtors, however, appeared by the same attorney, and desired to waive any other notice.   Doubt was raised whether the debtor not served could appear by attorney, and whether he must not appear in person. After hearing counsel, THE COURT (BLATCHFORD, District Judge) held that, under the forty-first and forty-second sections of the act [of 1867 (14 Stat. 537)], the appearance by attorney, of the debtor not served, might be entered.

WEYMOUTH (CRANE v.).   See Case No. 3,-358.

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

## Case No. 17,475.

### The W. F. GARRISON.

[1 Lowell, 139.] 1

District Court, D. Massachusetts.   March, 1867.

SALVAGE — RULE OF COMPENSATION — TOWAGE SERVICES.

1. In salvage, when the benefit received will warrant it, the salvors will be entitled to share to a greater or less degree in that benefit. The compensation should include a gratuity or premium for the encouragement of promptness and gallantry, and is not based merely on the value of the respective vessels and the dangers to which each was exposed, or to the hardships undergone.

2. Services rendered after reaching a port of safety, in towing to a port where repairs could be made, are towage, and not salvage.

3. Where a valuable steamer went in search of a schooner reported to be disabled, and found her after five hours' search, and towed her to a place of safety in two hours more, and afterwards towed her into port, these services being done in the intervals of the steamer's usual employment, and the last service being towage worth one hundred dollars, and the value saved was $11,000, the salvage awarded was $1,700.

Some hours before daylight, in the morning of the 28th of November last, the schooner William F. Garrison, on her voyage from Boston to the southward, in ballast, had arrived some ten or twelve miles to the westward of Gay Head, in Martha's Vineyard, and in trying to reef her mainsail in a heavy blow from the northwest was taken aback and lost her foremast and part of her maintopmast. The master rigged a stay from the mainmast head to the windlass and set one of her jibs, but was unable to work into Vineyard Sound, and brought up toward noon under the lee of the island of No-Man's-Land.   He set a signal of distress and went on shore for assistance. He intended to go over to Martha's Vineyard to hire a steamer, but after engaging a boat and boat's crew, he thought the attempt too hazardous with the wind and sea as high as they then were.   The wind blew from the north-west very heavily during the remainder of the day and some time into the night, and the schooner lay at a single anchor, and safely enough so long as the wind should remain in that quarter.   In the course of the day the signal of distress was seen by Mr. Smith, the underwriters' agent at Chilmark, and he went seventeen miles to Edgartown, and arriving at about 8 p. m. notified the agent of the steamer Monohansett of what he had seen, but did not describe the place where the schooner lay with entire accuracy.   The steamer was fired up and sent to Holmes Hole, where her master lives, and he joined her and took command.   The wind was still blowing heavily and there was considerable sea outside, and the weather was unusually cold for the season.   The steamer ran down to the place where they understood the vessel to be,

1 [Reported by Hon. John Lowell. LL. D.. District Judge, and here reprinted by permission.]